IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------x
In re:                                    )    Chapter 11
                                          )
FOAMEX INTERNATIONAL INC.                 )    Case No. 05-12685 (KG)
                                          )
          Reorganized Debtor.             )
-----------------------------------------------------------x
                                          )
BANK OF NEW YORK, AS INDENTURE            )    Civil Action No. 07-212 (JJF)
TRUSTEE,                                  )
                                          )
          Appellant,                      )
                                          )
     v.                                   )
                                          )
FOAMEX INTERNATIONAL INC., et al.         )
                                          )
          Appellees.                      )
                                          )
-----------------------------------------------------------x
```

## ANSWERING BRIEF OF APPELLEES FOAMEX INTERNATIONAL INC., _ET AL._

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Pauline K. Morgan (Del. Bar No. 3650)
Joseph M. Barry (Del. Bar No. 4221)
Kenneth J. Enos (Del. Bar No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Appellees Foamex International Inc., _et al._

Dated: Wilmington, Delaware
       July 10, 2007

# TABLE OF CONTENTS

**Page**

BASIS OF APPELLATE JURISDICTION..................................................................................1

STATEMENT OF THE ISSUE PRESENTED ...........................................................................1

STANDARD OF REVIEW ........................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ..................................................................1

STATEMENT OF FACTS .........................................................................................................5

    A.   The Debtors' Turnaround and Successful Restructuring....................................................5

    B.   The 2005 and 2007 Subordinates Notes and Notes Indentures. .......................................6

    C.   BNY's Claims in the Debtors' Bankruptcy Cases.............................................................9

    D.   Treatment of the BNY Claims Under the Debtors' Plan. ................................................10

SUMMARY OF THE ARGUMENTS ......................................................................................11

    A.   The Bankruptcy Court Correctly Held that the 2005 Subordinated Notes  and 2005 Notes Indenture Do Not Provide for Post Maturity Compound Interest.....................................12

    B.   The Plain Language of the 2005 Notes Indenture, 2005 Subordinated Notes, BNY's Filings in the Bankruptcy Court and Applicable Decisional  Law All Support the Payment of Simple, Not Compound, Interest. ...............................................................15

    C.   The Cases Cited by BNY in the BNY Opening Brief Lend Little,  If Anything, to the Court's Analysis of the Issue Presently Before the Court. ..............................................19

    D.   The Debtors' Proposed Treatment of the Holders of the  2005 Subordinated Notes Does Not Render Them Impaired ......................................................................................23

CONCLUSION.........................................................................................................................24

DB02:6040531.12

064397.1001

## TABLE OF AUTHORITIES

**Cases**

*Astoria Fed. Sav. & Loan Assn v. Rambalakos,*
   49 A.D.2d 715 (N.Y. App. Div. 1975) ............................................................... 20, 21

*Bank Leumi Trust Co. v. Sanford Ross Management, Ltd.,*
   101 A.D.2d 759 (N.Y. App. Div. 1984) .................................................................. 21

*Beal Bank v. Crystal Props., Ltd. (In re Crystal Props., Ltd.),*
   268 F.3d 743 (9th Cir. 2001) .................................................................................. 21

*Citibank, N.A. v. Liebowitz,*
   110 A.D.2d 615 (N.Y. App. Div. 1985) .................................................................. 21

*European American Bank v. Peddlers Pond Holding Corp.,*
   185 A.D.2d 805 (N.Y. App. Div. 1992) ............................................................. 20, 21

*Gutman v. Savas,*
   17 A.D.3d 278 (N.Y. App. Div., 1st Dep't. 2005) ............................................. 12, 22

*In re Ace-Texas, Inc.,*
   217 B.R. 719 (Bankr. D. Del. 1998) ...................................................................... 23

*In re Best Payphones, Inc.,*
   2003 Bankr. LEXIS 180 (Bankr. S.D.N.Y. March 10, 2003)................................... 21

*In re City of New York,*
   824 N.Y.S.2d 768 (N.Y. Sup. Ct. August 24, 2006) ......................................... 12, 13

*In re Dilts,*
   143 B.R. 644 (Bankr. W.D. Pa. 1992) ........................................................ 16, 17, 18

*In re E-II Holdings Inc.,*
   1997 U.S. Dist. LEXIS 10090 (S.D.N.Y. July 14, 1997) ........................................ 13

*In re Foamex International Inc.,*
   Ch. 11 Case No. 05-12685 (KG) (Bankr. D. Del. March 21, 2007)............................ 4

*In re Grayboyes,*
   2006 U.S. Dist. LEXIS 6671 (E.D. Pa. February 22, 2006)............................... 16, 17

*In re Marfin Ready Mix Corp.,*
   220 B.R. 148 (Bankr. E.D.N.Y. 1998)..................................................................... 12

DB02:6040531.12                                    064397.1001

*In re PPI Enterprises (U.S.), Inc.*,
  324 F.3d 197 (3d Cir. 2003) .................................................................................... 23

*In re Realty Associates Securities Corp.*,
  163 F.2d 387 (2d Cir. 1947) .................................................................................... 20

*In re Realty Associates Securities Corp.*,
  66 F.Supp. 416 (E.D.N.Y. 1946) ............................................................................ 20

*In re Schuster's Will*,
  3 N.Y.S.2d 702 (N.Y. Surr. Ct. 1938) ..................................................................... 12

*Martin v. Star Publishing Co.*,
  107 A.2d 795 (Del. Super. Ct. 1954) .................................................................. 16, 17

*Newburger-Morris Co. v. Talcott*,
  219 N.Y. 505 (1916) ................................................................................................ 13

*O'Brien v. Young*,
  95 N.Y. 428 (N.Y. 1884) ............................................................................. 19, 20, 21

*Rosenbaum v. Rose*,
  35 Misc. 2d 431 (N.Y. Sup. Ct. 1962) ................................................................ 16, 18

*Rourke v. Fred H. Thomas Assoc.*,
  616 N.Y.S.2d 160 (N.Y. Sup. Ct. 1994) ................................................................. 12

*Rourke v. Fred H. Thomas Associates*,
  216 A.D.2d 717 (N.Y. App. Div., 3rd Dep't. 1995) ................................................ 12

*Sindelar v. Fritzsch*,
  167 A.D.2d 812 (N.Y. App. Div., 3d Dep't. 1990) ............................................ 13, 16

*Slutsky v. Blooming Grove Inn, Inc.*,
  147 A.D.2d 208 (N.Y. App. Div. 1989) .................................................................. 21

*Stull v. Joseph Feld, Inc.*,
  34 A.D.2d 655 (N.Y. App. Div. 1970) ............................................................... 20, 21

*Wolf v. Aero Factors Corporation*,
  126 F.Supp. 872 (S.D.N.Y. 1954) .......................................................................... 16

DB02:6040531.12

064397.1001

**Statutes**

28 U.S.C. § 158 ........................................................................................................... 1

N.Y. Gen. Obl. Law § 5-527 ...................................................................................... 13

**Other Authorities**

72 N.Y. Jur. 2d, Interest & Usury § 12 ...................................................................... 12

James F. Queenan, Jr., Chapter 11 Theory & Practice § 30.15 (1994) ........................................ 23

DB02:6040531.12

064397.1001

## BASIS OF APPELLATE JURISDICTION

This Court (the "District Court" or the "Court") has jurisdiction to hear this appeal (the "Appeal") pursuant to 28 U.S.C. § 158(a). *See In re Northwestern Corporation*, 2007 U.S. Dist. LEXIS 24167, *4 (D. Del. April 2, 2007) (Farnan, J.).

## STATEMENT OF THE ISSUE PRESENTED

Whether the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") correctly determined that, under New York law, post-maturity date interest on the 2005 Subordinated Notes (as defined below) did not compound, because the governing agreements between the parties do not provide for such compounding.

## STANDARD OF REVIEW

The District Court "reviews the Bankruptcy Court's findings of fact under a 'clearly erroneous' standard, and reviews its legal conclusions *de novo*." *Id.* (citation omitted). When "reviewing mixed questions of law and fact, the Court accepts the Bankruptcy Court's findings of historical or narrative facts unless clearly erroneous, but exercise[s] plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Id.* (internal quotations and citations omitted). Because the issue before this Court on appeal is strictly one of law, the Bankruptcy Court's decision is subject to plenary review.

## NATURE AND STAGE OF THE PROCEEDINGS

On September 19, 2005 (the "Petition Date"), Appellee Foamex International Inc. ("Foamex") and certain of its affiliated entities (collectively, prior to the Effective Date (as defined below), the "Debtors" and after the Effective Date, the "Reorganized Debtors" or the "Appellees") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy

Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). On February 1, 2007, the Bankruptcy

Court confirmed the *Debtors' Second Amended Joint Plan of Reorganization Under Chapter 11*

*of the Bankruptcy Code* (the "Plan") [Docket No. 1994]. The Plan became effective on February

12, 2007 (the "Effective Date").

        Pursuant to the Plan, all creditors and equity interest holders were unimpaired.

All creditors, including non-priority, general unsecured creditors, were paid in full plus interest

for the period between the Petition Date and the Effective Date.

        The Appellant, Bank of New York, as Indenture Trustee ("BNY" or the

"Appellant") is the indenture trustee under the indenture governing the 2005 Subordinated Notes

(as defined below) – unsecured notes that had matured prior to the Petition Date. Prior to and at

the hearing to consider confirmation of the Plan, BNY argued that the holders of the 2005

Subordinated Notes were impaired under the Plan since (as discussed more fully below) the Plan

paid them <u>simple</u> post-maturity interest rather than <u>compound</u> post-maturity interest. The

Debtors and BNY agreed to defer briefing on that issue until after confirmation of the Plan.

        On February 12, 2007, BNY filed its *Memorandum of Law of The Bank of New*

*York, as Indenture Trustee, In Support of Entry of Order Compelling Debtors to Pay Post-*

*Maturity Compound Interest on Their 2005 Notes in Accordance with their Confirmed Chapter*

*11 Plan* [Docket No. 2298] (the "BNY Memorandum") in the Bankruptcy Court seeking to

compel payment of compound post-maturity interest to the holders of the 2005 Subordinated

Notes, arguing that, as a matter of contract law, the indenture governing the terms of payment of

the 2005 Subordinated Notes entitled the holders of the 2005 Subordinated Notes to such

compound post-maturity interest. Although the 2005 Subordinated Notes matured prior to the

Petition Date and contained no express provision governing compound post-maturity interest,

2

BNY argued that the "only sensible way to compensate the holders of the 2005 Notes is to read the maturity date as having been forcibly extended by operation of the automatic stay..." BNY Memorandum, at ¶ 19 (App. at F123-124).[1] BNY maintained that failure to pay compound interest to the holders of the 2005 Subordinated Notes would result in a disparity of treatment vis-à-vis the holders of a separate tranch of subordinated notes (as more fully defined below, the "2007 Subordinated Notes") that were paid compound post-Petition Date interest under the Plan.

On March 12, 2007, the Reorganized Debtors filed their *Memorandum of Law in Opposition to the Request of the Bank of New York, as Indenture Trustee, for Entry of an Order Compelling the Debtors to Pay Post-Maturity Compound Interest on The 2005 Subordinated Notes* [Docket No. 2379]. Therein, the Reorganized Debtors argued that, under New York law, compound interest cannot be awarded absent an express provision in the governing documents, of which there was none in either the 2005 Subordinated Notes or the governing indenture. Because the holders of the 2005 Subordinated Notes were not contractually entitled to post-maturity date compound interest, the Reorganized Debtors argued that the holders of the 2005 Subordinated Notes received everything to which they were contractually entitled (principal plus simple, default-rate post-maturity interest) and were, therefore, unimpaired under the Plan.

On March 16, 2007, BNY filed its reply memorandum of law (the "BNY Reply") [Docket No. 2400] essentially restating its prior arguments and disputing the Reorganized Debtors' contentions.

Following the completion of briefing and in accordance with the parties' stipulated briefing schedule, on March 21, 2007, the Bankruptcy Court conducted a hearing (the "Hearing") at which it heard oral argument from the parties. At the outset of the Hearing, Judge

---

[1]     Citations to the *Appendix to the Opening Brief of the Bank of New York, as Indentured Trustee*, are abbreviated as "App. A____". Citations to the *Appendix to the Answering Brief of Appellees Foamex International Inc., et al.*, filed herewith are abbreviated as "App. F____".

3

Gross indicated that he had "fully read" all of the briefs and was prepared to hear the matter.

Transcript of Hearing, *In re Foamex International Inc.*, Ch. 11 Case No. 05-12685 (KG), p. 2

(Bankr. D. Del. March 21, 2007) (the "Transcript") (App. at A46).  At the conclusion of the

Hearing, the Bankruptcy Court issued lengthy and considered findings of fact and conclusions of

law on the record denying BNY's request for compound post-maturity interest on the 2005

Subordinated Notes.  Specifically, the Bankruptcy Court held that:

> this is not a situation where post-petition interest is not being paid
> for the 2005 note holders.  In fact the plan provides for payment of
> interest but not compound interest.  The difficulty with Bank of
> New York's argument is that the 2005 note holders do not have a
> contractual right to compound interest and I will say that the
> indenture trustee's very skillful use of their indenture, and the
> multiple provisions in the indenture, I think illustrate[s] the lengths
> the Court would have to go to in arriving to a conclusion that the
> indenture did expressly provide for compound interest.  I do
> emphasize skillful because I understood the argument, I followed
> it, it was extremely well made but it was not persuasive for the
> Court.
>
> In other words, I think what I'm basically concluding is that the
> 2005 note holders have received all that they bargained for, and
> that the debtor's solvency is successful.  Reorganizations do not
> change the contractual rights of the 2005 note holders nor do those
> factors change the obligations of the debtors here.  There clearly is
> no express provision for the 2005 note holders to receive
> compound interest.
>
> Accordingly, the Court agrees with the debtor's position that there
> is no support in fact or law to support the Bank of New York's
> request.  Neither the governing document which is the indenture or
> the governing law, New York law, support the request.
> Accordingly, the court denies the Bank of New York's request for
> compound interest.

Transcript, at pp. 28-29 (App. at A72-73) (emphasis added).

On March 23, 2007, the Bankruptcy Court entered an order incorporating the oral

findings of fact and conclusions of law made on the record at the Hearing [Docket No. 2430].

4

BNY filed its notice of appeal on April 2, 2007 [Docket No. 2443], and on June 25, 2007, BNY filed the Opening Brief of Appellant the Bank of New York, as Indenture Trustee (the "BNY Opening Brief").

## STATEMENT OF FACTS

### A.    The Debtors' Turnaround and Successful Restructuring

On December 23, 2005 – approximately three months after the Petition Date – the Debtors filed their original plan of reorganization (the "Original Plan") and accompanying disclosure statement.  Under the Original Plan, the holders of the Debtors' senior secured notes would have received their pro rata share of 100% of the equity in the reorganized company and general unsecured creditors, including BNY's constituencies, would have received their pro rata share of warrants to purchase 5% of the equity in the reorganized company and up to $1.5 million of cash (not to exceed 5% of their claims).  The Debtors' shareholders would have received nothing on account of their equity interests under the Original Plan.

After filing the Original Plan, the Debtors re-commenced the process of negotiating with their major creditor constituencies.  In the meantime, the Debtors' business performance began to improve.  To expand on and optimize this improved business performance, the Debtors retained special business consultants to, among other things, determine whether such improved business performance could support improved recoveries for creditors and equity interest holders.  The result was a revised business plan and financial projections that indicated a much more optimistic view of the recoveries for all parties-in-interest in the Debtors' chapter 11 bankruptcy cases.

Based upon the Debtors' revised business plan and projections, the Debtors' management and professionals were able to negotiate for nearly $1 billion in debt and equity

5

financing upon the Debtors' emergence from bankruptcy. In addition, the Debtors filed an

amended plan of reorganization (*i.e.*, the confirmed Plan), providing for all creditors to be paid in

full, plus post-Petition Date interest, and for equity interest holders to receive a recovery. In

other words, between December 2005 and the Effective Date, the Debtors were able – through

strategic business decisions, thoughtful planning and favorable market conditions – to take what

was otherwise a pennies-on-the-dollar case and turn it into a full recovery case for everyone.

Thus, under the Plan, the holders of the 2005 Subordinated Notes (as defined below) received

full payment of the principal due to them plus nearly $12 million in post-maturity default-rate

interest. By this Appeal, BNY alleges entitlement to compound interest which would result in

payment of an additional amount of approximately $880,000.

**B.**     **The 2005 and 2007 Subordinates Notes and Notes Indentures.**

As of the Petition Date, the Debtors had two outstanding tranches of unsecured

subordinated notes. Specifically, pursuant to an indenture (the "2005 Notes Indenture"), dated as

of December 23, 1997, Foamex and its subsidiary Foamex Capital Corporation ("Foamex

Capital") issued $98 million (original principal amount) of 13 1/2% Senior Subordinated Notes

(the "2005 Subordinated Notes"), that matured on August 15, 2005 (more than one month prior

to the Petition Date).

Separately, pursuant to an indenture (the "2007 Notes Indenture," and together

with the 2005 Notes Indenture, collectively, the "Notes Indentures"), dated as of June 12, 1997,

Foamex and Foamex Capital issued $150 million (original principal amount) of 9 7/8% Senior

Subordinated Notes (the "2007 Subordinated Notes," and together with the 2005 Subordinated

Notes, collectively, the "Subordinated Notes") that were due to mature on June 15, 2007 (more than four months after the Effective Date).[2]

The Subordinated Notes were unsecured obligations of Foamex and Foamex Capital (as well as of the Debtors that guaranteed the obligations thereunder) and were subordinated in right of payment to the Debtors' secured debt, but ranked *pari passu* in right of payment with each other and with the Debtors' other unsecured obligations. BNY is the indenture trustee under both of the Notes Indentures.

The relevant provisions of the 2005 Notes Indenture governing the payment of interest are sections 2.12 and 4.1. Section 2.12, titled "Defaulted Interest," states, in pertinent part, that:

> [i]f the Issuers...default in a payment of interest on the Notes, they shall pay the defaulted interest...plus, to the extent lawful, interest payable on the defaulted interest...at the rate provided in the Notes and in Section 4.1 hereof.

2005 Notes Indenture, at § 2.12 (App. at A08).

---

[2]    BNY contends in its opening brief that the Plan created an "odd result" in that two *pari passu* creditors (the holders of the Subordinated Notes) whose governing documents are identical are, nonetheless, being treated differently. There is nothing "odd" about the treatment of the holders of the Subordinated Notes given that they are all receiving unimpaired treatment in accordance with the terms of their respective Notes Indenture. The 2007 Subordinated Notes did not mature prior to the Petition Date or, indeed, at any time prior to the Effective Date. Thus, the Debtors' Plan provides for pre-maturity payment of compound interest at the default rate, as required by the 2007 Notes Indenture. Payment of simple post-Maturity Date interest to the 2005 Subordinated Noteholders, however, is not impairment because that is all that the 2005 Notes Indenture and the 2005 Subordinated Notes require. Moreover, to the extent BNY is utilizing the 2007 Notes Indenture to interpret the 2005 Notes Indenture, such action is expressly prohibited by the Notes Indentures. *See* 2005 Notes Indenture, at § 13.9 ("This Indenture may not be used to interpret any other indenture...[and a]ny such indenture...may not be used to interpret this Indenture."); 2007 Notes Indenture, at § 13.09 (same) (App. at F083).

DB02:6040531.12                                                                                                064397.1001

Section 4.1, titled "Payment of Notes," states:

The Issuers shall pay or cause to be paid the principal of, premium, if any, and interest on the Notes on the dates and in the manner provided in the Notes.

\* \* \*

The Issuers shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal at the rate equal to 1% per annum in excess of the then applicable interest rate on the Notes to the extent lawful; it shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue installments of interest and Liquidated Damages (without regard to any applicable grace period) at the same rate to the extent lawful.

2005 Notes Indenture, at § 4.1 (App. at A09).

The 2005 Subordinated Notes further provide that payments of interest were to be

made

semi-annually in arrears on February 15 and August 15, commencing on February 15, 1998...Interest on the Notes shall accrue from the most recent date to which interest has been paid or, if no interest has been paid, from the date of issuance; provided that if there is no existing Default or Event of Default in the payment of interest, and if this Note is authenticated between a record date referred to on the face hereof and the next succeeding Interest Payment Date, interest shall accrue from such next succeeding Interest Payment Date, except in the case of the original issuance of Notes, in which case interest shall accrue from the date of authentication. The Issuers shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal at the rate equal to 1% per annum in excess of the then applicable interest rate on the Notes to the extent lawful; it shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue installments of interest and Liquidated Damages (without regard to any applicable grace period) at the same rate to the extent lawful.

2005 Subordinated Notes, at p. A-8, § 1 (App. at A22).

The 2005 Subordinated Notes further require final payment on August 15, 2005

(the "Maturity Date"). *See id.* at p. A-2 (App. at A16).

BNY contends that sections 2.8 and 8.1 of the 2005 Notes Indenture are also relevant to the issue before the Court. Section 8.1, titled "Termination of Issuers Obligations," states that the

> Indenture shall cease to be of further effect…when all outstanding Notes theretofore authenticated and issued have been delivered…to the Trustee for cancellation and the Issuers have paid all sums payable by the issuers [t]hereunder.
>
> \* \* \*
>
> [T]he issuers obligations in Section 4.1…shall survive until the Notes are no longer outstanding.

2005 Notes Indenture, at § 8.1 (App. at A13-14). Section 2.8 states that "[i]f the principal amount of any Note is considered paid under Section 4.1… it ceases to be outstanding and interest on it ceases to accrue." 2005 Notes Indenture, at § 2.8 (App. at A07).

## C.    BNY's Claims in the Debtors' Bankruptcy Cases.

On December 7, 2005, BNY filed virtually identical claims (the "Original BNY Claims") against each of Foamex and Foamex Capital claiming "[a]pproximately $208 million." Original BNY Claims, at p. 1 (App. at F085, F091). With respect to amounts due under the 2005 Notes Indenture, as of the Petition Date, BNY stated in the Original BNY Claims that "Foamex and FCC failed to pay both principal due and payable upon maturity and the final interest payment, which constituted an 'Event of Default' under the 2005 Indenture." Original BNY Claims, Attachment, at ¶ 2 (emphasis added) (App. at F086-087, F092-093).

On July 17, 2006 – nearly one year after the Maturity Date – BNY amended the Original BNY Claims by filing virtually identical amended claims (the "Amended BNY Claims," and collectively with the Original BNY Claims, the "BNY Claims") (App. at F097-104, F105-111). With respect to amounts due under the 2005 Notes Indenture, BNY again stated in the Amended BNY Claims that "Foamex and FCC failed to pay both principal due and payable

DB02:6040531.12                                                                064397.1001

upon maturity and the <u>final</u> <u>interest</u> <u>payment</u>, which constituted an 'Event of Default' under the 2005 Indenture." Amended BNY Claims, Attachment at ¶ 2 (emphasis added) (App. at F100, F107).

**D.      Treatment of the BNY Claims Under the Debtors' Plan.**

Pursuant to the Plan, the Subordinated Notes were allowed in the aggregate amount of $208,150,130.55 and were to be paid in full on the distribution date under the Plan in cash plus Post-Petition Interest (as defined in the Plan and discussed below). Plan, at p. 30 (App. at A43).

With respect to the 2005 Subordinated Notes – which matured one month prior to the Petition Date – the Plan required payment of Post-Petition Interest defined as "accrued and unpaid interest pursuant to the 2005 Senior Subordinated Notes Indenture from the Petition Date through the Effective Date at the default rate provided for in the 2005 Senior Subordinated Notes Indenture[.]" Plan, at p. 14-15 (App. at A40-41).

With respect to the 2007 Subordinated Notes – which had not matured as of the Petition Date and were not scheduled to mature until June 15, 2007 – the Plan likewise provided for payment of Post-Petition Interest defined as "accrued and unpaid interest (including interest on interest that is due and owing and unpaid, compounded semi-annually on semi-annual interest payment dates) pursuant to the 2007 Senior Subordinated Notes Indenture from the Petition Date through the Effective Date at the default rate provided for in the 2007 Senior Subordinated Notes Indenture[.]" Plan, at p.15 (App. at A41).

064397.1001

In other words, under the Plan, all holders of the Subordinated Notes enjoy the benefit of payment of a default rate of interest, in accordance with the provisions of the governing Notes Indenture.

On February 12, 2007, the Reorganized Debtors paid BNY principal and interest as of the Maturity Date as well as $11,910,530.50 in simple, post-Maturity Date default-rate interest on account of the 2005 Subordinated Notes. If this Court accepts BNY's contention that it is entitled to compound, post-Maturity Date interest, the Reorganized Debtors would be liable to BNY for an additional amount of approximately $880,000.

## SUMMARY OF THE ARGUMENTS

1.      The Bankruptcy Court correctly concluded that, under New York law, in order to be awarded compound interest, there must exist an express agreement among the parties to pay such interest and, here, no such agreement exists.

2.      The plain language of the 2005 Notes Indenture, 2005 Subordinated Notes, BNY's filings in the Bankruptcy Court and applicable decisional law all support the payment of simple, not compound, interest. Accordingly, the Bankruptcy Court correctly interpreted the 2005 Subordinated Notes and 2005 Notes Indenture as providing for simple post-Maturity Date interest.

3.      The Bankruptcy Court correctly concluded that the holders of the 2005 Subordinated Notes are unimpaired under the Plan because the Plan affords them all of the rights to which they are entitled under the 2005 Subordinated Notes and 2005 Notes Indenture.

DB02:6040531.12                                                                  064397.1001

**ARGUMENTS**

A.  **The Bankruptcy Court Correctly Held that the 2005 Subordinated Notes
    and 2005 Notes Indenture Do Not Provide for Post Maturity Compound Interest.**

The parties do not dispute that the 2005 Notes Indenture is governed by New

York law. "As a general rule, under New York law, compound interest is disfavored, *Rourke v.*

*Fred H. Thomas Assoc.*, 616 N.Y.S.2d 160, 162 (N.Y. Sup. Ct. 1994), and is not allowed in the

absence of an express contract or statutory authority." *In re Marfin Ready Mix Corp.*, 220 B.R.

148, 159 (Bankr. E.D.N.Y. 1998) (emphasis added) *citing In re Schuster's Will*, 3 N.Y.S.2d 702

(N.Y. Surr. Ct. 1938), *aff'd* 257 A.D. 55 (App. Div. 1939), *aff'd* 284 N.Y. 569 (1940) (emphasis

in *Marfin* omitted); *see Gutman v. Savas*, 17 A.D.3d 278, 279 (N.Y. App. Div., 1st Dep't. 2005)

("Compound interest…is recoverable where there is an express agreement between the parties.")

(citation omitted); *In re City of New York*, 824 N.Y.S.2d 768 (N.Y. Sup. Ct. August 24, 2006)

("compound interest is recoverable only where the agreement at issue specifically sets forth

plaintiff's entitlement to interest compounded annually.") (citation omitted); 72 N.Y. JUR. 2D,

INTEREST & USURY, § 12, at 20-21 ("It is established law that in the absence of an express

agreement for either compound interest or interest on interest, or statutory authority, such interest

is not recoverable."). In New York, "as a matter of law, there can be no implied agreement to

charge compound interest…" *Rourke v. Fred H. Thomas Associates*, 216 A.D.2d 717, 718 (N.Y.

App. Div., 3rd Dep't. 1995).[3]

---

[3]     Contrary to its current argument, BNY argued before the Bankruptcy Court that "case law suggests that [an agreement to pay compound interest] can be implied from the documents[.]" (BNY Reply, at p. 6, n.4.) (App. at F137) and that "the only sensible way to compensate the holders of the 2005 Notes is to read the maturity date…as having been forcibly extended by operation of the automatic stay…" BNY Memorandum, at ¶ 19 (App. at F123-124). The Reorganized Debtors submit that these arguments manifest doubt on the part of BNY that the 2005 Notes Indenture is as express or, in its words, "clearly stated" on the issue of post-maturity compound interest as it now contends on appeal. Given the clear lack of authority to support these arguments, BNY seems to have abandoned them on appeal.

Compound interest is so disfavored in New York that until June 24, 1989 "compound interest payments had been void in New York as against public policy."[4] *In re E-II Holdings Inc.*, 1997 U.S. Dist. LEXIS 10090, *3 (S.D.N.Y. 1997) *citing Newburger-Morris Co. v. Talcott*, 219 N.Y. 505 (1916).

As to what constitutes an "express" agreement, the Reorganized Debtors do not necessarily disagree with BNY's characterization that "[f]or something to be 'express,' it just has to be clearly stated…" BNY Opening Brief, at p. 16 (App. at F161). Case law further teaches that in order to be express, a provision governing payment of compound interest must also be specific. *See Sindelar v. Fritzsch*, 167 A.D.2d at 813 (since the debt instrument at issue "made no specific provision for the rate of interest to be charged following maturity…", the contract rate does not apply) (emphasis added); *In re City of New York*, 824 N.Y.S.2d at 768 (debt instrument must "specifically set forth" borrower's obligation to pay compound interest). As BNY's counsel conceded at the Hearing, the 2005 Subordinated Notes and the 2005 Notes Indenture are "very complicated documents…" Transcript, at p. 22 (App. at A66). The Bankruptcy Court reviewed the 2005 Subordinated Notes and the 2005 Notes Indenture – complicated documents, indeed – and correctly concluded that "[t]here clearly is no express provision for the 2005 note holders to receive compound interest." Transcript, at p. 29 (App. at A73).

It is simply an incorrect characterization of the Bankruptcy Court's ruling to say, as BNY does, that "the Bankruptcy Court did not disagree with BNY's reading of the Indenture…nor did the Bankruptcy Court suggest an alternative reading…[r]ather, the Bankruptcy Court indicated that the Indenture did not 'expressly' provide for post-maturity

---

[4]    On June 24, 1989, the law in New York was changed by statute to permit compound interest. *See In re E-II Holdings Inc.*, 1997 U.S. Dist. LEXIS at *3 *citing* N.Y. GEN. OBL. LAW § 5-527.

compound interest, because it was required to read various provisions of the indenture together to arrive at the position advocated by BNY." BNY Opening Brief, at p. 2 (App. at F142).[5] The Bankruptcy Court made no such ruling and unmistakably <u>disagreed</u> with BNY's reading of the 2005 Subordinated Notes and the 2005 Notes Indenture. At no point did the Bankruptcy Court manifest any adoption of or agreement with BNY's reading of the governing documents. Instead, the Bankruptcy Court indicated that it fully read all of the briefs (Transcript, at p. 2) (App. at A46) and fully understood BNY's cobbling together of various provisions of the 2005 Notes Indenture (*id.* at p. 29) (App. at A73). Nevertheless, it rejected BNY's arguments and held that the 2005 Notes Indenture contained no provision – express, implied or otherwise – requiring the payment of post-maturity compound interest.[6] As the Bankruptcy Court noted, "[t]he difficulty with Bank of New York's position is that the 2005 note holders do not have a contractual right to compound interest…the Court agrees with the Debtor's position that there is no support in law or fact to support the Bank of New York's request. Neither the governing document…or the governing law…support the request." Transcript, at p. 29 (App. at A73).[7] In other words, not only did the Bankruptcy Court find that the requirement to pay compound post-maturity interest was not, in the words of BNY, "clearly stated" and therefore, express, the Bankruptcy Court found that is was not stated at all. Accordingly, because New York law

---

[5]     BNY's contention that the Bankruptcy Court "seemed to imply that [an express] provision needed to be made in one sentence or…a separate single paragraph…" is similarly unsupported by the record. BNY Opening Brief, at p. 15 (App. at F160). Simply put, the Bankruptcy Court made no such observation or ruling.

[6]     BNY even presented the Bankruptcy Court with highlighted copies of the various provisions on which it relied so that the Bankruptcy Court could "see them more easily". Transcript, at p. 3 (App. at A47).

[7]     At the Hearing, the Bankruptcy Court referred to BNY's argument as "skillful" and "well made." Transcript, at p. 29 (App. at A73). In its opening brief, BNY characterizes Judge Gross' offhand compliment as a tacit adoption of its reading of the 2005 Notes Indenture. Opening Brief, at p. 15 (App. at F160). Judge Gross also characterized the issue as "extremely well briefed…" by both parties and the arguments by both parties as "excellent and very helpful…". Transcript, at p. 24 (App. at A68). It is inappropriate for any party to characterize such compliments as anything other than colloquial comments stemming from the civility for which Judge Gross is widely known and which he expects in his courtroom from all litigants. As such, the Court should afford no weight to BNY's characterization of Judge Gross' comments.

14

requires an express agreement before compound interest can be awarded, the Bankruptcy Court correctly denied BNY's request, and its decision should be affirmed.

**B.     The Plain Language of the 2005 Notes Indenture, 2005 Subordinated Notes, BNY's Filings in the Bankruptcy Court and Applicable Decisional Law All Support the Payment of Simple, Not Compound, Interest.**

As noted above, the relevant provisions governing payment of principal and interest on the 2005 Subordinated Notes are sections 2.12 and 4.1 of the 2005 Notes Indenture and section 1 of the 2005 Subordinated Notes.

Section 4.1 – addressing payment of the 2005 Subordinated Notes – requires the Debtors to pay default rate interest on "overdue installments of interest…" 2005 Notes Indenture, at § 4.1 (App at A09). In turn, section 1 of the form of 2005 Subordinated Notes states that "[t]he Issuers shall pay interest…on overdue principal at the rate equal to 1% per annum in excess of the then applicable interest rate on the Notes…[and] shall pay interest…on overdue installments of interest…at the same rate…" 2005 Subordinated Note, at p. A-8, § 1 (App. at A22). The parties do not dispute that the Maturity Date, as specified in the 2005 Subordinated Notes, occurred on August 15, 2005.

On the Maturity Date, the final installment of principal and interest was due. Put another way, once the Maturity Date occurred, there were no further "installments" of interest that came "due" under the terms of the 2005 Notes Indenture and the 2005 Subordinated Notes. BNY conceded this point in the BNY Claims and the BNY Memorandum, both which state, with respect to the 2005 Subordinated Notes, that "Foamex and FCC failed to pay both principal due and payable upon maturity and the final interest payment…." BNY Memorandum, at ¶ 23 (emphasis added) (App. at F124-125); BNY Claims, Attachment, at ¶ 2 (emphasis added) (App. at F087, F093, F100, F107). There being no express provision or mechanism in the 2005 Notes

064397.1001

Indenture or the 2005 Subordinated Notes for calculating interest following the Maturity Date, the Bankruptcy Court correctly concluded that such provision cannot now be written into the governing documents.

This reading of the 2005 Notes Indenture and the 2005 Subordinated Notes is consistent with the long line of cases holding that, following maturity of a loan, the contract rate no longer applies unless expressly agreed to in the loan documents. *See In re Grayboyes*, 2006 U.S. Dist. LEXIS 6671, *34 (E.D. Pa. February 22, 2006) ("because the note is silent on the methodology for calculating interest, this Court affirms the bankruptcy court's conclusion that [the bank] must be limited to simple interest on debtor's principal balance."), *aff'd In re Grayboyes*, 2007 U.S. App. LEXIS 3536 (3d Cir. February 12, 2007); *Wolf v. Aero Factors Corporation*, 126 F.Supp. 872, 881 (S.D.N.Y. 1954) ("Under New York law, a matured contract which contains no provision for interest after the debt is past due, draws interest on its principal from the date of maturity, not by virtue of the contract, but as damages for the breach thereof[]" and the contract rate no longer applies), *aff'd Wolf v. Aero Factors Corporation*, 221 F.2d 291 (2d Cir. 1955); *In re Dilts*, 143 B.R. 644, 647 (Bankr. W.D. Pa. 1992) (holding that where interest accrues "until paid," the term "until paid" means "until maturity" and the contract rate of interest no longer applies after that date); *Sindelar v. Fritzsch*, 167 A.D.2d 812, 813 (N.Y. App. Div., 3d Dep't. 1990) (holding that following maturity, contract rate of interest does not apply to post-maturity non-payment damages); *Rosenbaum v. Rose*, 35 Misc. 2d 431, 433 (N.Y. Sup. Ct. 1962) (holding that pre-maturity contract rate does not apply after maturity date); *Martin v. Star Publishing Co.*, 107 A.2d 795 (Del. Super. Ct. 1954) (holding that following maturity, simple

064397.1001

interest applies; theory that pre-maturity contract rate applies "lacks the force of logic and fairness of result afforded by the damages theory.").[8]

The Reorganized Debtors' reading of the 2005 Notes Indenture is also supported by BNY's own filings in the Bankruptcy Court. Throughout the Debtors' bankruptcy cases, BNY consistently stated that the interest installment due on the Maturity Date was the final interest payment. *See* pp. 9-10, *supra*. BNY filed at least six documents with the Bankruptcy Court conceding that the interest installment due on the Maturity Date was the "final interest payment." These statements, either individually or in their totality, clearly refute BNY's current argument that further installments of interest could come due under the 2005 Notes Indenture such that compounding would be triggered.[9]

Moreover, if BNY intended interest to compound following the Maturity Date, it could have and, indeed would have, drafted the 2005 Notes Indenture to make such obligation explicit. The Reorganized Debtors should not be penalized and the holders of the 2005 Subordinated Notes should not reap a windfall because of this omission.

Finally, BNY's current argument that the phrase "until paid" connotes a special contractual obligation requiring payment of post-maturity compound interest is similarly belied

---

[8]     Although in *Dilts* and *Grayboyes*, the Court was interpreting loan documents under Pennsylvania, as opposed to New York, law (the law governing the 2005 Notes Indenture), as discussed in the immediately preceding section, courts in both Pennsylvania and New York disfavor compound interest. And while *Martin* applied Delaware law, the court noted that it was following the "prevailing rule in our neighboring jurisdictions of Pennsylvania, Maryland and New York." *Id.* at 516.

[9]     The Bankruptcy Court misunderstood the Reorganized Debtors' argument in this regard. The Bankruptcy Court believed that the Reorganized Debtors were arguing that BNY's request for post-maturity compound interest should be denied since BNY did not request post-Petition Date interest in its proofs of claim filed in the Debtors' cases. *See, e.g.*, Transcript at pp. 26-27 (App. at A70-71). The Reorganized Debtors advanced no such argument. Instead, as discussed *supra*, the Reorganized Debtors submit that BNY's characterization of the interest installment due on the Maturity Date in the proofs of claim and other documents as the "final installment" manifests its understanding that it was, in fact, the final interest installment such that there were no further operative dates past the Maturity Date that would trigger compounding of post-maturity interest. The Reorganized Debtors believe that this argument provides this Court with independent grounds to affirm the Bankruptcy Court's decision.

by its own filings in the Bankruptcy Court. Before the Bankruptcy Court, BNY attempted to

distinguish the *Dilts* case by arguing that "the underlying debt instrument at issue lacked a

provision for post-maturity interest." *See* BNY Reply, at p. 6 (App. at F137). However, the debt

instrument in the *Dilts* case contained the purported magic "until paid" language that BNY now

contends evidences an agreement to pay post-maturity compound interest. Specifically, the debt

instrument in *Dilts* stated that the borrower "promises to pay...the principal...with interest on the

unpaid principal balance..., until paid,...Such monthly installments shall continue until the entire

indebtedness evidenced by this Note is fully paid..." *In re Dilts*, 143 B.R. at 644. If BNY

contended in the Bankruptcy Court that such a provision fails to state an express obligation to

pay post-maturity interest, then its current argument must be rejected since it relies on that very

language in support of its Appeal.[10]

       In sum, BNY's attempt to read into the 2005 Notes Indenture a mechanism to

compound post-Maturity Date interest is not only contrary to the plain language of the governing

documents and contrary to long-established doctrinal law, it contravenes BNY's stated position

throughout the Debtors' bankruptcy cases even in this very dispute. BNY's opportunity to

impose this additional obligation on the Reorganized Debtors was at the time of drafting – not at

the time of maturity or thereafter. BNY should not be permitted to turn back the clock and

impose contractual obligations on the Reorganized Debtors that do not now exist. For these

reasons, the Bankruptcy Court should be affirmed.

---

[10]    BNY contended before the Bankruptcy Court that the *Rosenbaum* case similarly contained no provision for post-maturity interest. *See* BNY Reply, at p. 6 (App. at F137). The *Rosenbaum* court indicated that the debt instrument at issue provided for "interest at a rate of 1½% payable monthly, or 18% per annum." *Rosenbaum*, 35 Misc. 2d at 431. Under BNY's reading, the interest rate in the *Rosenbaum* debt instrument would continue post-maturity since it accrues on a monthly basis without regard to the maturity date. The *Rosenbaum* court expressly rejected that contention, finding instead that the debt instrument must expressly provide for an agreement to pay a specific interest rate post-maturity and terms like "monthly" or "per annum" are insufficient to evidence such an agreement. *See id.* at 433.

**C.**    **The Cases Cited by BNY in the BNY Opening Brief Lend Little,**
    **If Anything, to the Court's Analysis of the Issue Presently Before the Court.**

In support of its argument, BNY has cited numerous opinions that considered debt instruments and the interest due thereunder. These cases provide no support for BNY's current argument. For example, BNY contends that *O'Brien v. Young* stands for the proposition that when parties use the phrase "until paid" in a debt instrument, such language binds the borrower to pay post-maturity interest at the contract rate. *O'Brien* stands for no such proposition. The *O'Brien* court began from the following basic premise – which supports Reorganized Foamex's position:

> By the decided weight of authority in this State, where one contracts to pay a principal sum at a certain future time with interest, the interest prior to the maturity of the contract is payable by virtue of the contract, and thereafter as damages for the breach of the contract...[and] after the maturity of such a contract, the interest is to be computed as damages according to the rate prescribed by the law, and not according to that prescribed in the contract if that be more or less.

*O'Brien v. Young*, 95 N.Y. 428, 429 (1884) (citations omitted). The court went on to state,

> But when the contract provides that the interest shall be at a specified rate until the principal shall be paid, then the contract rate governs until payment of the principal, or until the contract is merged in a judgment. And where one contracts to pay money on demand "with interest," or to pay money generally "with interest," without specifying time of payment, the statutory rate then existing becomes the contract rate and must govern until payment, or at least until demand and actual default, as the parties must have so intended.

*Id.* at 430.

Read in its entirety, therefore, the Reorganized Debtors submit that *O'Brien* more properly stands for the following propositions: (i) where a debt instrument contains a maturity date with no stated agreement to pay interest after the maturity date, then interest after the maturity date is not computed according to the contract, and (ii) where a debt instrument lacks a maturity date and is only payable at some future uncertain date or upon demand, then the

19

contract rate governs "until paid." Since the 2005 Subordinated Notes contain a stated maturity date, the contract rate does not control post-maturity and the analysis in *O'Brien* does not support BNY's conclusion.

   *In re Realty Associates Securities Corp.* similarly lends no support for BNY's position on appeal. In *Realty Associates*, the United States District Court for the Eastern District of New York found that the phrase "until duly paid" in a debt instrument meant until "timely" or "punctually" paid such that a covenant to pay interest "until duly paid" means, "until maturity and not beyond." *See In re Realty Associates Securities Corp.*, 66 F.Supp. 416, 419 (E.D.N.Y. 1946). In light of this interpretation, the court held that absent an express agreement in the contract to apply the contract rate past maturity – of which the court found none – the contract rate does not apply after maturity. *See id.* at 420. On appeal, the Second Circuit Court of Appeals disagreed but only because it found an express contractual provision not identified by the district court specifically and expressly stating the interest rate to be applied following nonpayment at maturity. *See In re Realty Associates Securities Corp.*, 163 F.2d 387, 390 (2d Cir. 1947). Here, there is no clearly stated, specific agreement to pay post-maturity compound interest on the 2005 Subordinated Notes. As such, *In re Realty Associates Corp.* lends no support to BNY's position.

   Similarly, although each of the other opinions cited by BNY contains some discussion of the concept that interest accrues until paid, these citations do not lead the Court to the outcome BNY advances, as the vast majority of these cases either: (i) lack analysis, detail or reference to the applicable debt instruments or the specific terms relied on, *see, e.g., Astoria Fed. Sav. & Loan Assn v. Rambalakos*, 49 A.D.2d 715, 716 (N.Y. App. Div. 1975) (one page opinion with no recitation of provisions relied on); *Stull v. Joseph Feld, Inc.*, 34 A.D.2d 655, 656 (N.Y.

App. Div. 1970) (same); *European American Bank v. Peddlers Pond Holding Corp.*, 185 A.D.2d

805 (N.Y. App. Div. 1992) (same); *Citibank, N.A. v. Liebowitz*, 110 A.D.2d 615, 616 (N.Y. App.

Div. 1985) (same); *Bank Leumi Trust Co. v. Sanford Ross Management, Ltd.*, 101 A.D.2d 759,

760 (N.Y. App. Div. 1984) (same); *Slutsky v. Blooming Grove Inn, Inc.*, 147 A.D.2d 208, 210

(N.Y. App. Div. 1989) (discussion of applicable interest provision limited to a single paragraph);

(ii) involve a non-complex debt instrument bearing little, if any, similarity to the document at

issue in this Appeal, *see, e.g., O'Brien*, 95 N.Y. 428 (judgment); *Astoria Fed. Sav. and Loan

Ass'n*, 49 A.D.2d 715 (mortgage); *Stull*, 34 A.D.2d 655 (same); *European American Bank*, 185

A.D.2d 805 (same); *Citibank, N.A.*, 110 A.D.2d 615 (same); *Slutsky*, 147 A.D.2d 208 (same);

*Bank Leumi Trust Co.*, 101 A.D.2d 759 (subject debt instrument unclear, interest at issue only

$14,902.88); *Best Payphones, Inc.*, 2003 Bankr. LEXIS 180 (Bankr. S.D.N.Y. March 10, 2003)

(payphone services agreement), or (iii) do not involve the issue of compound interest which, as

the parties agree, requires an express – or in the words of BNY, "clearly stated" – agreement,

*see, e.g., O'Brien*, 95 N.Y. 428; *Astoria Fed. Sav. and Loan Ass'n*, 49 A.D.2d 715; *Stull*, 34

A.D.2d 655; *European American Bank*, 185 A.D.2d 805; *Citibank, N.A.*, 110 A.D.2d 615;

*Slutsky*, 147 A.D.2d 208; *Bank Leumi Trust Co.*, 101 A.D.2d 759; *Best Payphones, Inc.*, 2003

Bankr. LEXIS 180.

       In sum, the Reorganized Debtors submit that these are critical distinctions

rendering these opinions of little to no value to the Court's analysis as the case presently before

the Court involves: (i) highly sophisticated parties; (ii) a complex debt instrument; and (iii) most

importantly, a debt instrument that, regardless of BNY's acrobatics, does not contain an express

provision regarding the application of post-Maturity Date compound interest.[11]

---

[11]    *See Beal Bank v. Crystal Props., LTD. (In re Crystal Props., LTD.)*, 268 F.3d 743, 755 (9th Cir. 2001),
collecting cases noting examples of expressly drafted interest provisions.

          064397.1001

Finally, BNY's current argument that the Bankruptcy Court erred because it "rel[ied] on a body of case law that contradicts the law of New York or was otherwise patently inapplicable []" should be rejected for two primary reasons. First, the Bankruptcy Court did not erroneously "rely" on any single case from another jurisdiction to reach its conclusion that neither the 2005 Subordinated Notes nor the 2005 Notes Indenture require payment of post-maturity compound interest. BNY agrees that New York law requires an express agreement before compound interest will be awarded. *See* BNY Opening Brief, at p. 10-17 (App. at F155-162). The Bankruptcy Court, applying that legal precept, found that the documents governing this dispute simply did not contain any such provision, express or otherwise.

Second, much of BNY's argument before the Bankruptcy Court was predicated on non-New York law. Before the Bankruptcy Court, BNY relied on cases from, among other jurisdictions, Texas, Massachusetts, Ohio, Virginia and Nebraska simply because those cases – while inapplicable to a dispute governed by New York law – supported its position before the Bankruptcy Court. Indeed, of the sixteen cases cited in the BNY Memorandum, only four of them were decided under New York law and two of those merely addressed the issue of the validity of compound interest under New York law where, as discussed above, it void as against public policy until 1989.[12] The third, *Realty Associates*, has no application to the instant dispute, as discussed above and the fourth, *Gutman v. Savas*, supports the general proposition now advanced by both parties that an agreement to pay compound interest must be expressly stated. In other words, BNY relied largely on non-New York cases when it suited its ends, and thus,

---

[12]     *See Debentures Protective Comm. Of Continental Investment Corp. v. Continental Investment Corp.*, 679 F.2d 264, 270 (1st Cir. 1982) (concluding, in case pre-dating legislative act validating compound interest, that compound interest is void under New York law); *Elliott Assocs., L.P. v. The Republic of Peru*, 194 F.R.D. 116 (S.D.N.Y. 2000) (addressing issue of validity of compound interest obligation where debt instrument was entered into prior to legislative enactment permitting compound interest in New York).

064397.1001

having lost its claims before the Bankruptcy Court, cannot now be heard to complain that a review of case law from other jurisdictions constitutes legal error.

**D.    The Debtors' Proposed Treatment of the Holders of the 2005 Subordinated Notes Does Not Render Them Impaired**

BNY argues that the payment of compound post-Maturity Date interest is mandated if the Holders of the 2005 Subordinated Notes are to be left unimpaired under the Plan. *See* BNY Opening Brief at p. 17 (App. at F162).   However, this contention is only accurate if the Court accepts the manner in which BNY has "re-drafted" the 2005 Subordinated Notes Indenture to capitalize on the Debtors' bankruptcy filings.

Payment of simple post-Maturity Date interest is not impairment because that is all that the 2005 Notes Indenture and the 2005 Subordinated Notes require.   It is not the <u>Plan</u> that "impairs" the treatment of the 2005 Subordinated Notes by paying them simple post-Maturity Date interest.   Rather, it is the <u>2005 Notes Indenture itself</u> that limits the 2005 Subordinated Notes to simple post-Maturity Date interest.   In this regard, BNY is confusing the term "impairment" with the enhancement of existing rights or even the creation of new rights that do not exist under the 2005 Notes Indenture or the 2005 Subordinated Notes. *See In re Ace-Texas, Inc.*, 217 B.R. 719, 727 (Bankr. D. Del. 1998)  ("'impairment can be avoided only if the plan proposes cash payment in the full amount of the claim in accordance with the parties' agreement.'") *quoting* James F. Queenan, Jr., Chapter 11 Theory & PRACTICE § 30.15, at 30:49 (1994); *cf. In re PPI Enterprises (U.S.), Inc.*, 324 F.3d 197, 205 (3d Cir. 2003) (holding that where the "source of limitation on [a claimant's] rights..." is something other than the Plan, the claimant is not impaired).   BNY so confuses the term impairment that the Bankruptcy Court characterized its argument in this regard, appropriately so, as "circular." *See* Transcript, at p. 29 (App. at A73).

23

Simply put, reading the 2005 Notes Indenture and the 2005 Subordinated Notes as the Reorganized Debtors suggest renders the holders of the 2005 Subordinated Notes unimpaired; reading them as BNY suggests would be to manufacture new rights that do not otherwise exist.

## CONCLUSION

Payment of compound post-Maturity Date interest to BNY is simply unsupported by the 2005 Notes Indenture, the 2005 Subordinated Notes and applicable New York case law. Thus, the Bankruptcy Court appropriately denied BNY's request for post-maturity compound interest, and this Court should affirm the Bankruptcy Court's ruling.

Dated: Wilmington, Delaware
     July 10, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Pauline K. Morgan (Del. Bar No. 3650)
Joseph M. Barry (Del. Bar No. 4221)
Kenneth J. Enos (Del. Bar No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

Counsel for Appellees Foamex International Inc., *et al.*